101 So.2d 250

**CITY OF BIRMINGHAM**

**v.**

**Herbert B. WALKER et al.**

**6 Div. 801.**

Supreme Court of Alabama.

March 6, 1958.

Geo. B. Foss, Jr., Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee Walker.

London & Yancey, Birmingham, for Belcher, Inc., and others.

COLEMAN, Justice.

This is an appeal from a judgment denying appellant's petition to intervene in a suit filed in the Circuit Court of Jefferson County by Herbert B. Walker, plaintiff, against S. E. Belcher, et al., defendants. In that suit, the plaintiff, Walker, sought to recover damages for personal injuries alleged to have been sustained by him as the proximate result of the negligence of defendants in operating a motor vehicle on a public highway in the City of Birmingham, Alabama.

The City of Birmingham, a municipal corporation, hereinafter referred to as the City, alleged in its petition for intervention: that the plaintiff, Walker, was at the time of his injury, and is now, a police officer employed by the City, and was at the time and place of his injury engaged in his duties as the City's employee and police officer; that as a proximate result of Walker's injuries the City lost his services for 119 days; that under Act. No. 246, General Acts 1945, page 376 (1940 Code, Title 62, §§ 330(21) to 330(48), Pocket Parts), and Rule 11.7 of the Personnel Board of Jefferson County, Alabama, which was promulgated under authority of said Act No. 246, the Personnel Board determined that the City should pay, and the City did pay, to Walker the sum of $1,266.42, for his lost services of 119 days, at his full salary rate; that under the Alabama rule of damages, Walker cannot recover for such lost time where the employer continued to pay his wages (citing 6 Ala.L.R. 79–83), but that the City "can recover by virtue of legal or conventional subrogation or both"; that Walker orally or impliedly agreed that the City should be subrogated to his right of action against defendants to the extent that the City paid him his salary in said amount of $1,266.42; and that Walker orally or impliedly agreed that the City should be subrogated to any recovery he might obtain from defendants to the extent of the aforesaid salary payment. The petition further alleges that the interests of the City in said suit will not be adequately protected unless the City is allowed to intervene.

A copy of Personnel Board Rule 11.7 mentioned above is attached to the petition as Exhibit A, and is as follows:

"Rule 11.7

"Injury In Line of Duty: An employee who is injured while performing the duties of his position, without fault or negligence on his part, shall be allowed such leave with pay as the Board deems proper. Every application for such allowance shall contain a statement by the employee affirmed by his supervisor setting forth the details of the accident and supported by the certificate of a licensed physician setting forth the nature and extent of the injury and the probable period of disability. Every leave granted under the provisions of this rule shall be recorded in the Minutes of the Board and shall be entered in the roster as 'Injured With Pay'."

It appears that in the above mentioned suit, judgment by agreement was entered in favor of Walker and against the defendants for $30,750. The Circuit Court denied the City's petition for intervention and ordered that all costs not heretofore taxed against defendants be taxed against the City.

The question in this case is: Where a municipality has lost the services of an employee as the result of a personal injury sustained by said employee while he was performing the duties of his employment, said injury being the proximate consequence of the negligence of a third party, and the municipality, under compulsory statutory provisions, has paid said employee at his full salary rate during the time his services were lost, is the municipality subrogated to the employee's right of action against said third party to the extent of the amount so paid by the municipality to the employee during the time he was unable to work, under the rules of the common law and without any statutory provision giving the City the subrogation rights which it claims?

By denying the City's petition to intervene, the trial court answered the foregoing question in the negative. We are of opinion that the trial court was correct in this ruling.

We have not been cited to any statute conferring the right of subrogation on the City under the circumstances of this case, and the City's claim to subrogation must, therefore, rest on the law as set out in the former decisions of this and other common-law courts.

The City contends that the principles of law which operate to place an insurer in the position of the insured, in cases where the insurer has paid a property loss caused by a third party tort-feasor, have application here; and, that upon application of those principles here, the City is subrogated to the employee's rights against the party who injured him, at least to the extent that the City has paid the employee's wages during the time he was disabled as a result of the injury.

█ The general rule is that when an insurer pays the insured in accordance with the insurance contract for a loss of property proximately resulting from fire caused by the actionable misconduct of a third party, the insurer becomes, by the doctrine of equitable subrogation, the owner, pro tanto, of the claim of the insured against the third party. If such payment only partially reimburses the insured for the loss, the insurer is subrogated only to the extent of the amount paid, and the insured remains the owner of the claim for the unreimbursed amount of the loss. If such payment by the insurer fully reimburses the insured for the property loss, then the insurer is subrogated to the entire right of insured against the third party.

█ This doctrine is based on the theory that the insurer is a surety for the third party, who is the principal obligor to the insured, and so, upon the principle that one who has paid a debt for which another is primarily liable should be substituted for and have the rights of the primary creditor against the primary debtor, the insurer, with respect to the claim of insured against the third party tort-feasor, is

held to be substituted for the insured to the extent of the amount so paid by the insurer. The equity of such principle is said to be that the insured has only one claim and is entitled to one payment only, and that the loss should ultimately fall on the third party who caused it. This principle appears to be generally accepted with respect to indemnity contracts relating to property, and was recently stated by this court in a case involving insurer's right of subrogation on a tort claim for theft as follows:

" * * * Under the long settled law of this state, as elsewhere, an insurer carrying the risk of loss from the tortious act of a third person is upon payment of such loss subrogated to the cause of action of the insured, and may sue in the insurer's own name, or in the name of the insured for the use of the insurer. * * *." Adams v. Queen Insurance Co. of America, 1956, 264 Ala. 572, 579, 88 So.2d 331, 337. For other cases, see 12A Ala.Dig., Insurance, ☞606(1).

■ As to an insurer who has paid under a life insurance contract upon the death of the insured proximately caused by the actionable misconduct of another, subrogation to a right of action against the third-party tort-feasor causing the death has been denied. The rule has been stated as follows:

"The doctrine of subrogation applied in indemnity insurance, by which insurer is entitled to recover in the name or right of insured against a wrongdoer who has caused the destruction of the property covered by the policy, has no application to life insurance, for the reason that there is no right of action for causing the death of a person except as such remedy is given by statute, and for the further reason that life insurance is not a contract of indemnity; and, accordingly, subrogation not contracted for is not given insurer in case of death. Insurer is not entitled to recover against the wrongdoer who

has caused the death of insured, as there is no such relation between the wrongdoer and insurer as to entitle the latter having an interest in the life of insured only by contract to a recovery for the tort. * * *." 46 C.J.S. Insurance § 1209, p. 167.

Another text contains the following statement:

"There seems to be little doubt that a life insurance company cannot recover of one who has caused the death of an insured the amount which it has thereby been compelled to pay. Nor, in the absence of a stipulation in the policy to that effect, is an insurance company subrogated, on the payment of an accident policy, to the rights of the insured against the one who caused the injury, since accident insurance, unlike fire insurance, is not an indemnity contract, but an investment contract, in which the only parties concerned are the insurer and the insured or the beneficiary." 29 Am.Jur., Insurance, § 1340, pp. 1003 and 1004.

The City's argument is based on the proposition that its position is analogous to the position of an insurer of property rather than the position of an insurer under a life or accident policy. Cases from Illinois and Pennsylvaia support appellant's contention.

In an Illinois case, decided in 1954, the court was called upon to decide whether or not in the absence of statutory subrogation, an employer could recover from a third-party tort-feasor the amount of compensation which the employer had paid to the injured employee under the Illinois Workmen's Compensation Act. Geneva Construction Co. v. Martin Transfer & Storage Co., 4 Ill.2d 273, 122 N.E.2d 540, 543. In that case the court observed:

"The remedy of common-law subrogation in workmen's compensation cases is largely academic, inasmuch as the vast majority of States have varying statutory provisions giving the employ-

er or insurer who pays compensation to an employee injured by a third-party tort-feasor recourse, against the wrong-doer. 35 Minn.L.Rev. 654; 38 Harv. L.Rev. 972. * * *"

In Alabama, statutory provision for subrogation of the employer to such rights of the injured employee against a third party is found in Title 26, § 312, Code 1940, as last amended.

The Illinois court also noted that in jurisdictions where the employer's common-law right of subrogation has been considered, there is a conflict in the decisions and rationale of the courts. Numerous decisions allowing subrogation and others to the contrary are cited in the opinion. The Illinois case adopted the view allowing the employer to be subrogated, largely on the principles which obtain in fire insurance cases, and in pertinent part said:

"* * * Therefore, if the fire or marine insurance company, which pays for the loss, is, without the aid of a statute, subrogated *pro tanto* to the rights of the insured against the tort-feasor, by parity of reasoning, the employer who pays the injured employee compensation should likewise be subrogated *pro tanto* to the rights of the employee against such wrongdoer.

* * * * * *

"In workmen's compensation cases, where the non-negligent employer has been required to pay compensation under the terms of the statute to an employee injured by a third-party tort-feasor, that loss should fall ultimately upon the wrongdoers responsible for it. If the non-negligent employer is deprived of his right of subrogation, it would result in the unjust enrichment of the employee, who could retain both compensation and damages, thereby violating a basic tenet of the common law that there may not be a double satisfaction for the same wrong. In fact, that common-law principle has been deemed to be the basis for the enact-ment of the various statutory subrogation provisions. 26 W.Va.L.Q. 183, 184; Miller v. New York Railways Co., 171 App.Div. 316, 157 N.Y.S. 200. If the employer is allowed a right of subrogation, all parties will have been duly paid, no one paid twice or imposed with double liability, and the loss will fall upon the only party at fault, in accordance with the equitable objectives of the doctrine. Vance, Insurance, 680. Moreover, allowing the non-negligent employer subrogation rights would also be in accordance with the legislative policy of protecting the rights of the employer, as evidenced by section 29 of the Workmen's Compensation Act, and would be consistent with remaining valid subrogation provisions of the act." 122 N.E.2d 545, 546.

As hereinafter indicated, we are persuaded that the accident insurance analogy is the better view. Moreover, the question of the common-law right of the *insurer* of an employer under the Workmen's Compensation Act to be subrogated to an injured employee's right of action against a third-party tort-feasor has been previously considered by this court. In holding that such insurer had no right of subrogation in the absence of statute, this court said:

"Appellant's first contention is that the remedy—more correctly speaking the right—of subrogation given by the statute, Code of 1923, § 7586, Code of 1940, Tit. 26, § 311, is not exclusive; that such right exists under the common law against one who causes a loss to another. The subrogee in this case is not within any such rule. It is a volunteer who has, for consideration paid, insured the employer against a statutory liability and *its right of subrogation depends entirely upon the statute*. It is a statutory subrogee, and the right to which it is subrogated is the right of action arising in favor of the injured workman or his dependents, as a proximate consequence of the neg-

ligence or wrongful act of such third person. * * *." (Emphasis supplied.) Metropolitan Casualty Ins. Co. of New York v. Sloss-Sheffield S. & I. Co., 241 Ala. 545, 547, 3 So.2d 306, 308.

Although there is authority to the contrary, we think the better reasoning has been concisely summarized as follows:

" * * * It has been suggested that an employer who has paid compensation should be subrogated, without the aid of statute, to the rights of the employee against the third person, by analogy to subrogation in cases of fire and marine insurance. The basis for subrogation in the latter case is that the contract is one of indemnity for pecuniary loss and that it is inequitable that the insured should receive double indemnity by collecting from the insurer and from the third person who, in justice, should be the one to pay the loss ultimately. But the compensation payable to the workman under the Compensation Acts is not in any sense indemnity for his loss. Indeed, there can be no true indemnity for a bodily injury. Accordingly, the real analogy is that to accident and life insurance in which the insurer is not subrogated to the insured's right against the third person. * * *" 38 Harvard Law Review 972.

The Pennsylvania cases supporting appellant's contentions arose under a statute of that State which required a city to make payments to certain employees injured in line of duty. It does not appear that the statute gave the city any right of subrogation, yet the court held that the city could recover from the third-party tort-feasor.

In City of Philadelphia v. Philadelphia Rapid Transit Co., 1940, 337 Pa. 1, 10 A. 434, the decision was that the city must assert its claim by intervention in the suit by the employee against the third party and not in a separate suit. Without extended discussion, the city's right to subrogation appears to have been assumed, and the opinion recites in pertinent part:

"The right to recover wages and expenses being in the individual fireman, whatever right the city has to recover the payments made by it must of necessity be based upon the equitable doctrine of subrogation. Under our practice the right of subrogation can only be enforced in the original action and not in a separate suit in the name of the city. (Citations omitted.) If the city wished to assert its right to recover the payments made against defendant, it should have intervened in the suit brought by the firemen. (Citations omitted.)" (Parenthesis added.) 10 A.2d 435.

However, in Potoczny, to Use of City of Philadelphia v. Vallejo, 1952, 170 Pa.Super. 377, 85 A.2d 675, the Superior Court of Pennsylvania expressly held that the city was entitled to subrogation for sums paid an employee under the same statute, and in support of its holding cited Insurance Co. of North America v. Fidelity Etc. Co., 123 Pa. 523, 16 A. 791, 2 L.R.A. 586, and Fidelity Title & Trust Co. v. People's Natural Gas Co., 150 Pa. 8, 24 A. 339, as well as the Rapid Transit case, supra.

Insurance Co. of North America v. Fidelity Etc. Co. and Fidelity Title & Trust Co. v. People's Natural Gas Co., supra, were both cases involving the subrogation rights of an insurer under a policy of fire insurance, and no question of the subrogation rights of an employer or of an insurer against accidental personal injury was involved or considered. Gildner v. First National Bank & Trust Co. of Bethlehem, 342 Pa. 145, 19 A.2d 910, also relied on, concerned subrogation rights of creditors to the proceeds of a mortgage; and First National Bank of Ashley v. Reily, 165 Pa. Super. 168, 67 A.2d 679, also cited, dealt with the subrogation rights of an execution purchaser to recover for the payment of taxes. While these authorities which were cited by the court did set out the doctrine of subrogation pertinent to the respective cases, those decisions did not concern the right of subrogation against a third party

liable for negligently causing injury to the person of another.

In the Potoczny case, supra [170 Pa. Super. 377, 85 A.2d 676], the court allowed the city's claim to subrogation on principles which are applied in cases of tort claims for damage to property where the insurer has paid the loss. The opinion makes no mention of any distinction between claims for injury to insured property and claims for injury to insured persons. All the parties in that case appear to have agreed that the city should be subrogated, because the opinion contains the following pertinent statement:

> "Neither plaintiff nor defendant objected to the city's subrogation, * *."

While the Potoczny case is authority to support appellant's contentions in the case at bar, its persuasive force is greatly impaired by the lack of adversary character in that proceeding with respect to the precise question presented in the instant case in which the opposing parties now vigorously contest their contradictory contentions. While the Potoczny case is authority under the statutes and cases of Pennsylvania, we are not persuaded that we should follow it here.

In the instant case, the payments made by the City to its policeman, Walker, were payments of an obligation the City owed because of its contract with Walker. Those payments were not made to satisfy any obligation due from the tort-feasor to Walker. The City's obligation arose from the contract with Walker, not from the tort of the third party.

█ We recognize that there are equities which favor the contention of appellant. The underlying philosophy which has motivated the enactment of a workmen's compensation act would appear to be best served when the ultimate loss falls on the tort-feasor who causes the loss, rather than on the innocent employer. Nevertheless, the statute here involved was not drawn to carry out that philosophy. Accordingly, in the absence of legislation, we must follow the rules of the common law.

The laws governing the City and its employees constitute the contract of the City with its policeman. One part of that contract is the provision that the employee injured in line of duty without fault shall be allowed "leave with pay." The City claims subrogation because it has paid under that provision of the contract. The statute provides that the Personnel Board shall provide for "sick leave with pay." Title 62, § 330(39), Code 1940. There is no suggestion that this includes the power to provide for subrogation.

█ The situation is no different than would be the case if the employee had entered into the same contract provisions with an insurance company as the other contracting party in place of the City. If the insurance company in such case should seek to be subrogated to the employee's rights against a third-party tort-feasor injuring the employee, subrogation would not be allowed in the absence of a provision in the contract giving the insurer the right of subrogation. The rule has been stated as follows:

> "In the absence of any stipulation to that effect in the policy, an accident insurance company which pays the stipulated indemnity for an injury sustained by insured is not thereby subrogated to the rights of insured against a third person whose negligence caused the injury, and an attempted assignment by insured to insurer of such right to the extent of the payment of the loss is ineffective. It has been held, however, that a provision in the policy that the insurance company shall have a lien for all sums of money expended by it on the policy on any judgment that may be recovered against the wrongdoer is valid and enforceable." 46 C.J.S. Insurance § 1209, p. 157.

There is no provision for subrogating the City to its injured employee's rights in the statutes and rules in the instant case, and

the City is in the same situation as an insurer with a similar contract. The City's remedy in future cases is to make a new contract. In the instant case, the City is without remedy, because the court cannot make a contract for the parties, nor legislate.

We have not been cited to nor found any provision of the statute which would expressly authorize the Personnel Board to make a rule providing for subrogation. While the question is not before us, we deem it not inappropriate to observe that it may be doubted that such a provision can be made effective without an act of the legislature of this State so providing. We hasten to add that we are not presently aware of any obstacle to such legislative action.

The right of an accident insurance company to be subrogated to the insured's right of action against a third party who had injured him was considered in Gatzweiler v. Milwaukee Electric Ry. & Light Co., 136 Wis. 34, 116 N.W. 633, 634, 18 L.R.A.,N.S., 211. In that case the court held that an accident insurance policy is more like life than like fire insurance and should be classed with the former rather than the latter as to the insurer's right of subrogation, "* * * because in case of casualty insurance the right of the assured is not determinable by any definite rule for computing the money equivalent for the damages, as in the case of fire insurance; that the right to recover the stated or other sum is a property right bought and paid for by the assured as in case of life insurance, not a mere right to indemnity for a definitely ascertainable pecuniary loss. If it be true that in the absence of some stipulation to the contrary a contract of casualty insurance is not for the reasons stated by the Texas court (in Aetna Life Ins. Co. v. J. B. Parker & Co., 96 Tex. 287, 72 S.W. 168, 580, 621) one of indemnity giving rise in the circumstances of this case to the right of subrogation as against the party wrongfully causing the injury, and yet the parties might give it that character by a stipulation to that effect, so far as we can discover there was no such stipulation in the contract in question. * * *." 116 N.W. 634.

The Texas court stated the reasons for denying subrogation to an insurer against personal injury as follows:

"* * * But there is an essential distinction between a liability for loss of property which has been insured and that for damages on account of injuries inflicted upon a person by the negligence of another. In the case of the destruction of property by fire in the first instance the damage or loss which has been caused by the carrier and that indemnified against is identical. It is the value that has been destroyed. But where a person has received personal injuries, caused by the negligence of another, several elements enter into the estimate of damages besides the mere stipulated indemnity for loss of time contracted for in the accident policy, and the loss is by no means identical. In the one there may be included full compensation for mental and physical suffering, loss of time, diminished capacity to earn money, etc., and in some instances punitory damages; while the other is a stipulated sum for loss of time only, which may or may not be full indemnity even for that. The accident policy undertakes to indemnify the insured, whether his injuries are the result of negligence or not, while the person or corporation inflicting the injuries can be held liable only for negligence; and, since so many elements enter into the estimate of the loss in the case of one that do not enter into or from (sic, form) any part of the other, there is wanting that identity of damage or loss that would entitle the insurer to subrogation on payment of the claim against him." 72 S.W. 621, 622.

In Mercer Casualty Co. v. Perlman, 62 Ohio App. 133, 23 N.E.2d 502, paragraph

2 of the syllabus by the court in that case recites as follows:

"The insurer in a policy of accident insurance which contains no provision for subrogation of the insurer, having paid a loss by reason of accidental injuries to the insured, is not subrogated to the rights of the insured to claim damages from a third person who negligently caused the injuries."

The opinion further recites in pertinent part as follows:

"* * * Nowhere in the policy is there any provision by which the payment of the obligation of the insurer, the plaintiff, could under any circumstances indemnify Roe or any one else for any loss by way of claims against him or them for such death, and there being no indemnity feature present, there can be no subrogation. (Citations omitted.)" (Parenthesis added.) 23 N.E.2d 503, 504.

With respect to the insurer's right to subrogation by reason of an attempted assignment of the claim for insured's wrongful death by her administrator, the court in Mercer Casualty Co. v. Perlman, supra, held such attempted assignment ineffective, and quoted the following statements:

"* * * 'He [the insured] does not receive that sum of money because of the accident, but because he has made a contract providing for the contingency; an accident must occur to entitle him to it, but it is not the accident, but his contract, which is the cause of his receiving it.'

"'* * * The plaintiffs sustain no relation to the authors of the wrong other than that of mere contractors with the party injured; and their contract liability is the medium through which the injury is brought home to them.'" 23 N.E.2d 504.

■ In the case at bar, the City has no relation to the third party who injured the City's employee other than that of contractor with the injured employee and the City's contract obligation is the medium through which the employee's injury is brought home to the City. The City's obligation to pay its injured policeman is not a contract of indemnity. There is no provision for subrogation of the City in the statutes to which we have been cited.

We are of opinion that the conclusion here reached is supported also by the following cases: Employers' Liability Assur. Corp., etc. v. Daley, 183 Misc. 975, 51 N.Y.S.2d 567; affirmed 271 App.Div. 662, 67 N.Y.S.2d 233; (dissent in 271 App.Div. 662, 68 N.Y.S.2d 743); 297 N.Y. 745, 77 N.E.2d 515; Suttles v. Railway Mail Ass'n, 156 App.Div. 435, 141 N.Y.S. 1024; The Federal No. 2, 2d Cir., 21 F.2d 313; United States v. Atlantic Coast Line R. Co., D.C., 64 F.Supp. 289; Crab Orchard Imp. Co. v. Chesapeake & O. Ry. Co., 4 Cir., 115 F.2d 277; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Maryland Casualty Co. v. Paton, 9 Cir., 194 F.2d 765; Aetna Life Ins. Co. v. Otis Elevator Co., Tex.Civ.App., 204 S.W. 376.

■ We are further of opinion that the City cannot succeed under its claim to conventional subrogation by reason of the alleged assignment or agreement made by its policeman. This court has said:

"It is the generally, if not universally, accepted American doctrine that all causes of action arising from torts to real or personal property, by which its value is diminished, as well as choses ex contractu, survive and pass to the executor or administrator as assets in his hand, and are in consequence assignable. See note to McCormack v. Toronto Railway Company, 7 Am. & Eng.Ann.Cas. 500. It is also well settled that, in the absence of statutory provision, rights of action for torts purely personal do not survive, and are not assignable. Weller v. Jersey City Railway Co., 68 N.J.Eq. 659, 61 A. 459; Id., 6 Am. & Eng.Ann.Cas. 442. Scores

of adjudicated cases might be cited to both these propositions. * * *.

" * * * No debt arises out of tort in advance of judgment. * * *." Holt v. Stollenwerck, 174 Ala. 213, 215, 216, 217, 56 So. 912.

 The provisions of §§ 78, 87, and 101, Title 9, Code 1940, do not operate to give the City a right of subrogation in this case. See City of Birmingham v. Trammell, post, p. 245, 101 So.2d 259.

In view of the conclusion here reached, we do not consider appellees' argument that the City's case is moot.

For the reasons stated, we hold that the City is not subrogated to the policeman's cause of action against the third party alleged to have caused his injury. Because the City has no right to subrogation, either legal or conventional, its petition to intervene was properly denied and the judgment appealed from is affirmed.

Affirmed.

All the Justices concur except STAKELY, J., not sitting.